IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

CHARLES PRESCOTT, on behalf of himself )
and all others similarly situated, )
 )
    *Plaintiff*, )
 )    Case No.: 5:17-cv-365
    v. )
 )    Collective and Class Action
MORGREEN SOLAR SOLUTIONS, LLC; )    **COMPLAINT**
DARRIN GREEN; and VAUGHN )
INDUSTRIES, LLC, )
 )
    *Defendants*. )

COMES NOW, Charles Prescott ("Named Plaintiff"), on behalf of himself and all others similarly situated (collectively "Named, Opt-In, and Putative Plaintiffs"), by and through undersigned counsel, hereby sets forth this collective action against Defendants MorGreen Solar Solutions, LLC, Darrin Green, and Vaughn Industries, LLC (collectively "Defendants"), and alleges as follows:

## PRELIMINARY STATEMENT

1. This action is brought individually and as a collective action for unpaid minimum wages, unpaid overtime compensation, liquidated damages, and all related penalties and damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. Defendants had a systemic company-wide policy, pattern, or practice of misclassifying their employees as independent contractors, willfully failing to compensate employees for all hours worked, willfully failing to pay employees the statutory minimum wage rate for all hours worked, willfully failing to compensate employees at the appropriate overtime rate for overtime hours worked, and violating statutory record-keeping provisions.

2. This action is also brought individually and as a class action against Defendants for failing to compensate Named, Opt-In, and Putative Plaintiffs all owed, earned, and/or promised wages, including per diem, on their regular pay date, in direct contravention of the North Carolina Wage and Hour act ("NCWHA"), N.C. Gen. Stat. § 95-25.1, *et seq*.

3. Defendants' pay practices and policies were in direct violation of the FLSA and the NCWHA. Accordingly, Named, Opt-In, and Putative Plaintiffs seek unpaid straight-time compensation, unpaid per diem, unpaid owed, earned, and/or promised wages, and unpaid overtime compensation, in addition to liquidated damages, attorneys' fees and costs, prejudgment interest, and other damages permitted by applicable law.

## JURISDICTION AND VENUE

4. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for the claims brought under the FLSA, 29 U.S.C. § 201, *et seq*.

5. The United States District Court for the Eastern District of North Carolina has personal jurisdiction because Defendants conduct business in Wilson County, North Carolina which is located within this District.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), inasmuch as Defendants conducted business within the Eastern District of North Carolina, and the substantial part of the events or omissions giving rise to these claims occurred in this District.

7. The claims for violations of the NCWHA are based upon the statutory law of the State of North Carolina.

8. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 for the pendent state claims because they arise out of the same nucleus of operative facts as the FLSA claim.

9. All of the alleged causes of action can be determined in this judicial proceeding and

will provide judicial economy, fairness, and convenience for the parties.

10. The evidence establishing liability for both causes of action will be similar, and neither issue will predominate nor create confusion for a jury.

**PARTIES**

11. Named Plaintiff is an adult resident of the State of North Carolina, residing at 6420 Whitehall Drive, Fayetteville, North Carolina 28303. He worked for Defendants as an hourly-paid installer/laborer from approximately November, 2016 through December 27, 2016.

12. The FLSA collective action Opt-In and Putative Plaintiffs consist of individuals who did work or have worked for Defendants (either as separate or joint employers) at the Site One project location in Wilson, North Carolina, as hourly-paid workers, who were classified as independent contractors, and who were suffered or permitted to work by Defendants, at any time within the three (3) year period prior to joining this lawsuit under 29 U.S.C. § 216(b).

13. The NCWHA Rule 23 proposed class action members consist of individuals who did work or have worked for Defendants (either as separate or joint employers) at the Site One project location in Wilson, North Carolina, as hourly-paid workers, who were classified as independent contractors, and who were suffered or permitted to work by Defendants, at any time within the two (2) year period prior to the filing of this lawsuit.

14. Defendant MorGreen Solar Solutions, LLC ("Defendant MorGreen") is a domestic Limited Liability Company, registered in the State of North Carolina since September 27, 2016, with its principal place of business in North Carolina located at 761 19th Street SW, Hickory, NC 28602. At all relevant times, Defendant MorGreen has been an employer of Named, Opt-In, and Putative Plaintiffs, and is thus liable as an employer, joint employer, single enterprise and/or otherwise according to statutory law.

15. Defendant Vaughn Industries, LLC ("Defendant Vaughn") is a nationwide construction contractor that performs electrical, mechanical (HVAC and Pipefitting), and plumbing in industrial/commercial sectors, high voltage substation, high voltage transmission and distribution, and renewable energy construction. Defendant Vaughn is a Limited Liability Company, founded in 1985, with its principal place of business located at 1201 E. Findlay Street, Carey, Ohio 43316. Defendant Vaughn was, at all times relevant to this action, a general contractor, agent, or principal of Defendant MorGreen. As such, Defendant Vaughn has, at all relevant times, done business in North Carolina, and has been an employer of Named, Opt-In, and Putative Plaintiffs, and is thus liable as an employer, joint employer, single enterprise, and/or otherwise according to statutory law.

16. Defendant Darrin Green ("Defendant Green") founded Defendant MorGreen, and was closely involved in its hiring, firing, and wage payment decisions during the relevant period. Defendant Green is located at 5152 East Bandys Cross Road, Catawba, NC 28609-8974

17. Upon information and belief, during the time period relevant to this action, each Defendant was an employer, joint employer, or member of an integrated, common enterprise, that employed Named, Opt-In, and Putative Plaintiffs, pursuant to the FLSA and NCWHA, in that each Defendant, or its agents, held or implemented the power, *inter alia*, to control the work performance of Named, Opt-In, and Putative Plaintiffs, and each Defendant received the benefit of Named, Opt-In, and Putative Plaintiffs' labor. More information about the nature and role of each Defendant within the enterprise is provided below.

## COVERAGE

18. At all times material to this action, Defendants have acted, directly or indirectly, in the interest of an employer or joint employer with respect to Named, Opt-In, and Putative

4

Case 5:17-cv-00365-FL   Document 1   Filed 07/21/17   Page 4 of 19

Plaintiffs.

19. At all times material to this action, Defendants were employers within the defined scope of the FLSA, 29 U.S.C. § 203(d).

20. At all times material to this action, Named, Opt-In, and Putative Plaintiffs were individual employees within the scope of the FLSA, 29 U.S.C. §§ 206 and 207.

21. At all times material to this action, Defendants were an enterprise engaged in related activities performed through a unified operation or common control for a common business purpose, as defined by the FLSA, 29 U.S.C. § 203(r).

22. At all times material to this action, Defendants were joint employers pursuant to 29 C.F.R. § 791.2.

23. At all times material to this action, Defendants were an enterprise engaged in commerce or the production of goods for commerce as defined by the FLSA, 29 U.S.C. §§ 203(s), 203(r), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.

## GENERAL FACTUAL ALLEGATIONS

24. Named Plaintiff worked for Defendants from approximately November, 2016 through December 27, 2016. Opt-In and Putative Plaintiffs worked for Defendants from approximately November, 2016, until January 14, 2017, the conclusion of the Site One project location in Wilson, North Carolina ("Wilson Project").

25. Named, Opt-In, and Putative Plaintiffs worked as hourly-paid installers/laborers on behalf of all Defendants, assisting in the manual installation of solar panels. In addition to

5

receiving an hourly wage, they also received a set per diem rate for each day of work. Named, Opt-In, and Putative Plaintiffs were not paid a salary for their work.

26. From the beginning of their work until approximately December 3, 2016, Named, Opt-In, and Putative Plaintiffs typically worked five (5) days per week, from Monday through Friday, from approximately 6:30 a.m. until 5:00 p.m. They also took a one-hour unpaid lunch break each day. Accordingly, during this period, Named, Opt-In, and Putative Plaintiffs typically worked approximately 47.5 hours per week.

27. From December 4, 2016, until the end of their employment, Named, Opt-In, and Putative Plaintiffs typically worked seven (7) days per week, from Monday through Saturday, from approximately 6:30 a.m. until 5:00 p.m., and on Sunday from 6:30 a.m. until 12:00 p.m. They also took a one-hour unpaid lunch break each day. Accordingly, during this period, Named, Opt-In, and Putative Plaintiffs typically worked approximately 62.5 hours per week. Although the aforementioned typical schedule is a conservative estimate, Named, Opt-In, and Putative Plaintiffs often worked more hours than listed during this period, including until 8:00 p.m. or 9:00 p.m. from Monday through Saturday, totaling approximately 86.5 hours in certain weeks.

28. The long schedules that Defendants required Named, Opt-In, and Putative Plaintiffs to work virtually eliminated their ability to pursue sources of income outside of their jobs with Defendants.

29. Defendants, in their sole discretion, set Named, Opt-In, and Putative Plaintiffs' hourly rate(s) of pay and per diem rate(s). Named, Opt-In, and Putative Plaintiffs had no control over their profit or loss capabilities, despite the fact that Defendants classified them as independent contractors.

30. Named, Opt-In, and Putative Plaintiffs were not permitted to hire their own

employees, despite the fact that Defendants classified them as independent contractors. Likewise, if Named, Opt-In, and Putative Plaintiffs did not show up to work, they could not send a replacement hired by them to perform the work.

31. Defendants instructed, supervised, and corrected all aspects of Named, Opt-In, and Putative Plaintiffs' work, despite the fact that Defendants classified them as independent contractors.

32. Defendant Vaughn supplied Named, Opt-In, and Putative Plaintiffs with building materials and tools needed to perform their work. For example, all nuts, bolts, washers, rivets, wiring, racking, and modules were provided by Defendant Vaughn.

33. Throughout the course of their employment, and particularly toward the end of their employment, Defendants regularly failed to pay Named, Opt-In, and Putative Plaintiffs both their agreed-upon hourly wages and per diem rates.

34. All Defendants always had access to Named, Opt-In, and Putative Plaintiffs' time records.

35. Named, Opt-In, and Putative Plaintiffs regularly complained to Defendants about their unlawful pay practices, and Defendants' practices have been the subject of at least one investigation by the North Carolina Department of Labor ("NCDOL") wherein the agency determined that Defendants had violated the NCWHA and provided Plaintiff with a right to sue letter.

36. As described herein, Defendants, as direct or joint employers, willfully violated Named, Opt-In, and Putative Plaintiffs' rights, and the rights of those similarly situated, by failing to pay them the wages they were owed, including minimum, promised, and overtime wages. In many weeks, Named, Opt-In, and Putative Plaintiffs were not paid at all for their hours worked.

## COMMON BUSINESS PRACTICES AND JOINT EMPLOYMENT FACTUAL ALLEGATIONS

37. Defendant Vaughn provides renewable energy services as a contractor throughout the State of North Carolina, as well as in several other states, specializing in the installation of solar fields or farms. Some of Defendant Vaughn's clients include governmental and private entities throughout the Midwestern and Southeastern United States.

38. Defendant MorGreen, a subcontractor for Defendant Vaughn, contracted exclusively with Defendant Vaughn throughout Defendant MorGreen's existence.

39. Defendant Green founded and holds a majority ownership stake in Defendant MorGreen. Defendant Green was actively involved in the day-to-day activities of Defendant MorGreen, and he dictates how the company operates, markets itself, acquires business, and compensates its employees. Defendant Green had and exercised the power to directly dictate whether Defendant MorGreen complied with or violated the FLSA and NCWHA.

40. As a subcontractor of Defendant Vaughn, Defendant MorGreen performed construction services on behalf of Defendant Vaughn based on the specifications, direction, and supervision provided by Defendant Vaughn.

41. Defendant Vaughn directly recruited and/or hired Named, Opt-In, and Putative Plaintiffs to work for or with Defendant MorGreen, and ultimately helped fulfill Defendant MorGreen's contractual obligations with Defendant Vaughn.

42. Named Plaintiff, and many Opt-In and Putative Plaintiffs, worked directly for Defendant Vaughn prior to working on the Wilson Project under the guise of working for Defendant MorGreen.

43. When Named, Opt-In, and Putative Plaintiffs were hired, their job was solely to

8

Case 5:17-cv-00365-FL   Document 1   Filed 07/21/17   Page 8 of 19

work on the Wilson Project, not to work on any other projects or sites beyond the direct control of Defendant Vaugn and Defendant MorGreen.

44. Defendant Vaughn required weekly safety meetings at the Wilson Project. They usually occurred each Thursday, and Named, Opt-In, and Putative Plaintiffs were all mandated to attend.

45. Named, Opt-In, and Putative Plaintiffs were directly supervised by foremen and supervisors of Defendant Vaughn. Foremen and supervisors of Defendant Vaughn possessed the ability to unilaterally hire, terminate, and otherwise direct the work of Named, Opt-In, and Putative Plaintiffs. Named, Opt-In, and Putative Plaintiffs recognized the authority of Defendant Vaughn's designated supervisors, obeyed all instructions, and understood that if they failed to meet Defendant Vaughn's expectations, then Defendant Vaughn could fire or otherwise discipline them.

46. Defendant MorGreen supervisors were formally in charge of recording the hours worked by Named, Opt-In, and Putative Plaintiffs, and issuing payments to Named, Opt-In, and Putative Plaintiffs on a bi-weekly basis. Defendant Vaughn enjoyed unfettered access to all time records, and at times directly interacted with Named, Opt-In, and Putative Plaintiffs to issue or expedite payment.

47. Defendant Vaughn was aware of Named, Opt-In, and Putative Plaintiffs' pay issues, and at times expedited payment accordingly. As such, all Defendants were jointly responsible for Named, Opt-In, and Putative Plaintiffs' compensation.

48. Defendant Vaughn was informed of and was aware that Named, Opt-In, and Putative Plaintiffs worked hours in which they did not receive any or all compensation.

49. On at least one occasion, Defendant MorGreen expressed that Named, Opt-In, and Putative Plaintiffs employees would not receive payment until Defendant Vaughn paid them.

50. The Master Subcontract Agreement between Defendant MorGreen and Defendant Vaughn provided that, "In the event Contractor has a good faith reason to believe that labor, material, or other obligations incurred in the performance of Subcontractor's Work are not being promptly paid, Contractor shall give written notice to Subcontractor and may take any steps deemed necessary to ensure that payments are utilized to pay such obligations." Besides expediting payment, Defendant Vaughn took no steps to ensure that Named, Opt-In, and Putative Plaintiffs were being paid lawfully.

51. The services performed by Named, Opt-In, and Putative Plaintiffs, including racking, wiring, and panel installation, was integral to Defendant Vaughn's and Defendant MorGreen's businesses and operations, which center around renewable energy construction and installation.

52. All Defendants directly or indirectly exerted control over Named, Opt-In, and Putative Plaintiffs.

53. Upon information and belief, at all times material to this complaint, Defendants' uniform approach throughout their operations in securing, assigning, monitoring, and compensating Named, Opt-In, and Putative Plaintiffs was intentionally done to evade their obligations under the FLSA and NCWHA.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

54. Named Plaintiff brings the First Count of the instant Complaint as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of himself and all similarly situated employees.

55. Similarly situated employees, for purposes of the FLSA collective action claims, include individuals who did work or have worked for Defendants (either as separate or joint employers) at the Site One project location in Wilson, North Carolina, as hourly-paid workers,

who were classified as independent contractors, and who were suffered or permitted to work by Defendants, at any time within the three (3) year period prior to joining this lawsuit under 29 U.S.C. § 216(b).

56. These putative plaintiffs or similarly situated employees are known to all Defendants, are readily identifiable, and may be located through all Defendants' records.

57. Pursuit of this action collectively will provide the most efficient mechanism for adjudicating the claims of Named, Opt-In, and Putative Plaintiffs.

58. Named Plaintiff requests that he be permitted to serve as representative of those who consent to participate in this action, and that this action be conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b).

59. Pursuant to 29 U.S.C. § 216(b), attached to and filed with the instant Complaint as Exhibit A, is a Consent to File Suit as Plaintiff executed by Named Plaintiff.

## NCWHA CLASS ACTION ALLEGATIONS

60. Named Plaintiff brings the Second Count of the instant Complaint as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and all similarly situated employees, for relief to redress and remedy Defendants' violations of the NCWHA, N.C. Gen. Stat. § 95-25.1, *et seq.*

61. Pursuit of this action as a class will provide the most efficient mechanism for adjudicating the claims of Plaintiffs and members of the proposed class.

62. <u>The Proposed Class</u>: Individuals who did work or have worked for Defendants (either as separate or joint employers) at the Site One project location in Wilson, North Carolina, as hourly-paid workers, who were classified as independent contractors, and who were suffered or permitted to work by Defendants, at any time within the two (2) year period prior to the filing of

this lawsuit.

63. <u>Numerosity</u>: The proposed class is so numerous that the joinder of all such persons is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. While the exact number of class members is unknown to Plaintiff at this time, upon information and belief, the class comprises of at least thirty-eight (38) persons.

64. <u>Common Questions Predominate</u>: There is a well-defined commonality of interest in the questions of law and fact involving and affecting the proposed class, and these common questions of law and fact predominate over any questions affecting members of the proposed class individually, in that all Named, Opt-In, and Putative Plaintiffs have been harmed by Defendants' failure to pay all owed, earned, and promised wages. The common questions of law and fact include, but are not limited to, the following:

   a. Whether Named, Opt-In, and Putative Plaintiffs were employees misclassified as independent contractors, pursuant to the NCWHA;

   b. Whether Defendants refused to pay Named, Opt-In, and Putative Plaintiffs all owed, earned, and/or promised wages, on their regular pay date, in violation of N.C. Gen. Stat. §§ 95-25.6, 95-25.7, and 95-25.13; and

   c. Whether Defendants compensated Named, Opt-In, and Putative Plaintiffs for all of their hours worked.

65. <u>Typicality</u>: The claims of Named Plaintiff are typical of the claims of each proposed class member, and the relief sought is typical of the relief which would be sought by each member of the class in separate actions. All putative class members were subject to the same compensation practices of Defendants, as alleged herein, including failing to pay employees all of their owed, earned, and/or promised wages pursuant to N.C. Gen. Stat. § 95-25.6. Defendants' compensation

policies and practices affected all putative class members similarly. Named Plaintiff and members of the proposed class sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

66. <u>Adequacy of Representation</u>: Named Plaintiff is able to fairly and adequately protect the interests of all members of the class, and there are no known conflicts of interest between Named Plaintiff and members of the proposed class. Named Plaintiff has retained counsel who are experienced and competent in both wage and hour law and complex class action litigation.

67. <u>Superiority</u>: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all class members is impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual class members may be small for some in the sense pertinent to the class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially greater than if the claims are treated as a class action. Prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the class, establishing incompatible standards of conduct for Defendants, and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they are not parties. The issue in this action can be decided by means of common, class-wide

proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

68. <u>Public Policy Considerations</u>: Defendants violated the NCWHA. Just as current employees are often afraid to assert their rights out of fear of direct or indirect retaliation, former employees may also be fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class action lawsuits provide class members who are not named in the Complaint a degree of anonymity, which allows for vindication of their rights while eliminating or reducing these risks.

## **COUNT ONE**
**Violation of the Fair Labor Standards Act**
**29 U.S.C. §§ 206, 207**
**(Failure to Minimum and Overtime Wages)**
**(On Behalf of Named, Opt-In, and Putative Plaintiffs)**

69. Named Plaintiff incorporates by reference all preceding paragraphs as if the same were set forth again fully at this point.

70. The FLSA defines "employee" as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), and "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d). The FLSA defines "employ" broadly, to cover anyone who is "suffer[ed] or permit[ed] to work." 29 U.S.C. § 203(g).

71. Pursuant to the FLSA, 29 U.S.C. § 206, employers must pay non-exempt employees a minimum wage of $7.25 per hour for all hours worked.

72. Pursuant to the FLSA, 29 U.S.C. § 207, employers must pay non-exempt employees at a rate of one and one-half (1.5) times their regular rate of pay, for all hours worked over forty (40) in one week.

73. At all relevant times, Named, Opt-In, and Putative Plaintiffs were non-exempt,

14

Case 5:17-cv-00365-FL   Document 1   Filed 07/21/17   Page 14 of 19

covered employees pursuant to the FLSA.  *See* 29 U.S.C. § 203(e).

74. Named, Opt-In, and Putative Plaintiffs were employed, either directly or jointly, by all respective joint employer Defendants, and were paid on an hourly basis to perform manual labor and/or other duties that do not satisfy the tests for exempt positions under the FLSA.

75. Defendants compensated Named, Opt-In, and Putative Plaintiffs as independent contractors, without regard to their legal obligations under the FLSA.

76. Named, Opt-In, and Putative Plaintiffs did not receive at least the statutory minimum wage of $7.25 per hour for all hours worked.

77. Named and Putative Plaintiffs typically worked more than forty (40) hours per week, but did not receive overtime compensation at a rate of one and one-half (1.5) times their regular hourly rate for hours worked over forty (40).

78. Defendants do and did not maintain accurate records of all hours worked by Named and Putative Plaintiffs, as required by the FLSA, 29 U.S.C. § 211(c) and 29 C.F.R. § 516.2(a).

79. Named, Opt-In, and Putative Plaintiffs regularly complained to Defendants about their unlawful pay practices, and Defendants' practices have been the subject of at least one investigation by the NCDOL and determining that Defendants were violating the law, eliminating Defendants' ability to affirmatively defend their failure to pay the appropriate minimum wage and overtime rates as having been done in good faith, entitling Named, Opt-In, and Putative Plaintiffs to liquidated damages in an amount equal to the amount of unpaid wages under 29 U.S.C. § 216(b).

80. The foregoing conduct, as alleged above, constitutes willful violations of the FLSA within the meaning of 29 U.S.C. § 255(a), permitting the recovery of unpaid minimum wages for up to three (3) years, rather than two (2) years.

81. As such, Named, Opt-In, and Putative Plaintiffs seek to recover from Defendants

the following damages:

    a. Minimum wages due;

    b. Overtime wages due;

    c. Liquidated damages in an equal amount;

    d. Reasonable attorneys' fees and costs;

    e. Pre-judgment interest; and

    f. All other legal and equitable relief as the Court deems just and proper.

## COUNT TWO
### Violation of the North Carolina Wage and Hour Act
### N.C. Gen. Stat. §§ 95-25.6, .7, and .13
### (Failure to Pay All Owed, Earned, and/or Promised Wages)
### (On Behalf of Named, Opt-In, and Putative Plaintiffs)

82. Named Plaintiff incorporates by reference all preceding paragraphs as if the same were set forth again fully at this point.

83. At all relevant times, Defendants have employed Named Plaintiff, Opt-In, and Putative Plaintiffs within the meaning of the NCWHA.

84. Defendants employed Named, Opt-In, and Putative Plaintiffs within the State of North Carolina.

85. It is unlawful under North Carolina law for an employer to "suffer or permit" an employee to work without paying owed, promised, or earned wages for all hours worked, in violation of N.C. Gen. Stat. §§ 95-25.6, 95-25.7 and 95-25.13.

86. Pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.6, employers must pay all owed, earned, and/or promised wages accruing to their employees, for all hours of work, at their regular hourly rate.

87. Defendants, pursuant to their policies and practices, knowingly failed to pay wages

16

to Named, Opt-In, and Putative Plaintiffs for all hours worked, by misclassifying Named, Opt-In, and Putative Plaintiffs as independent contractors, and by willfully refusing to compensate them for all hours worked at their agreed-upon hourly and per diem rates.

88. As set forth above, Named, Opt-In, and Putative Plaintiffs have sustained losses and lost compensation as a proximate result of all Defendants' violations.

89. For the reasons stated above, including, but not limited to, ignoring complaints lodged by Named, Opt-In, and Putative Plaintiffs, and proceeding in their practices despite an NCDOL investigation, Defendants cannot affirmatively defend their NCWHA violations as having been done in good faith, entitling Named, Opt-In, and Putative Plaintiffs to liquidated damages in an amount equal to the amount of unpaid wages under N.C. Gen. Stat. § 95-25.22(a1).

90. Accordingly, Named, Opt-In, and Putative Plaintiffs seek to recover from Defendants the following damages:

   a. Earned, owed, and/or promised wages due;
   b. Liquidated damages in an equal amount;
   c. Reasonable attorneys' fees and costs;
   d. Pre- judgment interest; and
   e. All other legal and equitable relief as the Court deems just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, Named Plaintiff, on behalf of himself and all those similarly situated, prays that this Honorable Court:

1. Issue an Order certifying this action as a collective action under the FLSA, and designate Named Plaintiff as a representative of all those similarly situated under the FLSA

collective action;

2. Issue an Order certifying this action as a class action under the NCWHA, and designate Named as a representative on behalf of all those similarly situated under the NCWHA class;

3. Award Named Plaintiff and all those similarly situated actual damages for all unpaid and misappropriated wages found due to Named Plaintiff and those similarly situated, and liquidated damages equal in amount, as provided by the NCWHA, N.C. Gen. Stat. § 95-25.22(a1), and pursuant to the FLSA, 29 U.S.C. § 216(b);

4. Award Named Plaintiff and all those similarly situated pre- and post-judgment interest at the statutory rate, as provided by the NCWHA, N.C. Gen. Stat. § 95-25.22(a), and pursuant to the FLSA, 29 U.S.C. § 216(b);

5. Award Named Plaintiff and all those similarly situated attorneys' fees, costs, and disbursements as provided by the NCWHA, N.C. Gen. Stat. § 95-25.22(d), and pursuant to the FLSA, 29 U.S.C. § 216(b); and

6. Award Named Plaintiff and all those similarly situated further legal equitable relief as this Court deems necessary, just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Named Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted, July 21, 2017.

    */s/ Gilda A. Hernandez*
    Gilda A. Hernandez, NCSB #36812
    Michael B. Cohen, NCSB #50629
    **THE LAW OFFICES OF GILDA A.**

HERNANDEZ, PLLC
1020 Southhill Drive, Ste. 130
Cary, NC 27513
Phone: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
mcohen@gildahernandezlaw.com

*Attorneys for Plaintiff*