IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NO. 5:17-cv-365

| | |
|---|---|
| CHARLES PRESCOTT, on behalf of himself and all other similarly situated persons,<br><br>      Plaintiff,<br><br>v.<br><br>MORGREEN SOLAR SOLUTIONS, LLC; DARRIN GREEN; and VAUGHN INDUSTRIES, LLC,<br><br>      Defendants. | **ORDER APPROVING JOINT MOTION FOR APPROVAL OF SETTLEMENT** |

On March 30, 2018, Plaintiffs and Defendant Vaughn Industries, LLC ("Defendant Vaughn") filed a Joint Motion for Approval of Settlement, together with thrity-five (35)[1] individually-executed settlement agreements, requesting that the Court approve the settlement agreements and dismiss Plaintiffs' claims against Defendant Vaughn with prejudice.

Having considered this Joint Motion for Approval of Settlement, the individually-executed settlement agreements, and the complete record in this matter, for the good cause shown, NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1.    The Court hereby grants the Joint Motion for Approval of Settlement and approves the settlements as set forth in the individually-executed settlement agreements. The Court finds that the terms of the individually-executed settlement agreements are fair, reasonable, and adequate to all Plaintiffs, and directs consummation of their terms and provisions.

---

[1] The parties agreed to file a subsequent joint notice with any missing fully executed settlement agreements at their earliest convenience.

2. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bonafide disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (l lth Cir. 1982). Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353-54. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id.* at 1354.

3. In this case, the Court finds that the settlements followed extensive investigation and negotiation, and was the result of a formal mediation involving vigorous arm's-length settlement discussions and the assistance of an experienced mediator. During the entire process, Plaintiffs and Defendant Vaughn were represented by counsel experienced in wage and hour law. Accordingly, the individually-executed settlement agreements resolve a clear and actual dispute under circumstances supporting a finding that is fair and reasonable.

4. The Court finds and determines the relief to the Plaintiffs collectively in the amount of $147,500.00 ("Gross Settlement Amount"), and pro rated as provided in the individually-executed settlement agreements, and to be paid by the Settlement Administrator, is fair, reasonable and adequate, and resolves the allegations set forth in the litigation. The Court gives final approval to and orders that those payments be made to the Plaintiffs who opted into the action as party Plaintiffs. Settlement payments shall be paid from the Gross Settlement Amount in accordance with the individually-executed settlement agreements.

5. The individually-executed settlement agreements include an agreement on payment of fees, expenses and costs to be paid to Plaintiffs' counsel. The parties negotiated the damages award without regard to attorneys' fees, and so there was no conflict of interest between Plaintiffs

and their counsel, and the Court need not review the settlement with any increased scrutiny. *See Martin v. Huddle House, Inc.*, No. 2:10-CV-0082-WCO, 2011 WL 611625, at *2 (N.D. Ga. Feb. 11, 2011) (potential conflict of interest requiring increased scrutiny only when the parties negotiate damages and fees at the same time); *Moreno v. Regions Bank*, 729 F.Supp.2d 1346, 1347 (M.D. Fla. 2010) (finding the fee appeared reasonable when "the parties negotiated [the attorney's fee amount] separately and without regard to the amount paid to the plaintiff"). Further, Plaintiffs' attorneys' request for one-third of the Gross Settlement Amount is "reasonable and appropriate" for wage and hour litigation in the Fourth Circuit. *See Hoffman v. First Student, Inc.*, 2010 U.S. Dist. LEXIS 27329, at *11 (D. Md. Mar. 23, 2010).

6. Plaintiffs' attorney's fees and expenses in the total amount of $49,166.66 shall be paid from the Gross Settlement Amount in full compromise and satisfaction of all attorneys' fees and expenses incurred by Plaintiffs' attorneys, and allocated among the Plaintiffs in accordance with the individually-executed settlement agreements and as against Defendant Vaughn. This is equal to one-third of the Gross Settlement Amount. Given the totality of the circumstances, the entire record, and the fact that the settlement reflects a substantial compromise between the parties' respective positions, the Court finds the individually-executed settlement agreements' award of fees, expenses, and costs to be reasonable. Accordingly, the Court awards $49,166.66 in fees and expenses for Plaintiffs' counsel. Further, the release of Plaintiffs' attorney's fees and expenses as set forth in the individually-executed settlement agreements is approved.

7. The Court appoints RG/2 to carry out the duties of Settlement Administrator, including: (i) establishing and maintaining a Qualified Settlement Fund ("QSF"); (ii) obtaining a taxpayer ID for the QSF and opening a checking account for the settlement fund; (iii) transferring

3

Case 5:17-cv-00365-FL   Document 56   Filed 04/17/18   Page 3 of 7

monies from the QSF as necessary; (iv) printing and mailing settlement checks to the individuals reflected on the individually-executed settlement agreements; (v) handling stop payment/reissue check requests; (vi) following up on undeliverable settlement checks; (vii) escheating non-negotiated checks to the appropriate state agency, to the extent required by applicable law; (viii) calculating and transmitting payment of Defendant Vaughn's portion of taxes on settlement payments, including but not limited to all FICA and FUTA taxes on settlement payments; (ix) performing all tax reporting duties and filings required by federal, state, or local law; and (x) transmitting payment of Plaintiffs' attorneys' fees and expenses to Plaintiffs' counsel.

8. The fees, expenses and costs associated with the Settlement Administrator's administration of this settlement shall be paid by Plaintiffs' counsel, from the fees and expenses referenced in Paragraph 6 of this Order and as addressed in individually-executed settlement agreements, and not from Plaintiffs' individual settlement awards.

9. Plaintiffs' counsel shall provide the Settlement Administrator with a spreadsheet containing the name, address, and settlement payment amount for each claimant.

10. The Settlement Administrator shall issue each claimant his or her settlement payment separated into two equal amounts: 50 percent shall be allocated to the claims asserted in the litigation for allegedly unpaid overtime and other claims for unpaid wages; and 50 percent shall be allocated to the claims asserted in the litigation for liquidated damages and other relief. The portion of each Settlement Payment allocated to claims of unpaid overtime and other wages will be subject to authorized or required deductions, including employee-paid payroll tax withholdings required by law, garnishments, and tax liens. However, Defendant Vaughn will remain responsible for paying the employer's share of all required payroll taxes, and the amount

of such taxes is not included in the Gross Settlement Amount. The portion of each Settlement Payment allocated to liquidated damages and other relief shall be characterized as non-wage income to the recipient.

11. The Settlement Administrator will report the portion of the Settlement Payment made to each Authorized Claimant attributable to wages on an I.R.S. Form W-2, and the portion of the Settlement Payment attributable to non-wages on an I.R.S. Form 1099. The Settlement Administrator shall be responsible for issuing a settlement check, less required withholdings and deductions, to each Plaintiff and mailing a settlement check, Form W-2s, and Form 1099s to each such Plaintiff.

12. The Court hereby dismisses all claims of Plaintiffs who submitted individually-executed settlement agreements in this matter, as they relate to Defendant Vaughn only, based on or arising out of any acts, facts, transactions, occurrences, representations or omissions alleged in the Complaint in this matter on the merits and with prejudice and without costs to any of the parties as against any other settling party, except as provided in the parties' mediation agreement and individually-executed settlement agreements.

13. As of the date of this Order, each and every Plaintiff who submitted an individually-executed settlement agreement hereby forever completely settles, compromises, releases, and discharges Defendant Vaughn from any and all past and present matters, disputes, claims, demands, rights, liabilities, expenses, damages, losses of any kind, and causes of action of any kind whatsoever, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, or other applicable law, which any Plaintiff has or might have, known or unknown, asserted or unasserted, of any kind whatsoever, that are

based upon, relate to, or arise out of or reasonably could have arisen out of the facts, acts, transactions, occurrences, events or omissions alleged in the litigation or by reason of the negotiations leading to the individually-executed settlement agreements, even if presently unknown and/or un-asserted. As further explained by the individually-executed settlement agreements, the claims released by each and every Plaintiff include, "without limitation, any claims [they] may have arising from or relating to [their] employment or engagement or separation from employment with or engagement by Defendant Vaughn, a release of any rights or claims [they] may have under Title VII of the Civil Rights Act of 1964, as amended, (which prohibits discrimination in employment based upon race, color, sex, religion and national origin); the Age Discrimination in Employment Act of 1967, as amended (which prohibits age discrimination in employment); the North Carolina Wage and Hour Act; the North Carolina Equal Employment Protection Act; the Americans with Disabilities Act of 1990, as amended (which prohibits discrimination based upon disability); the Fair Labor Standards Act ("FLSA"); the Equal Pay Act of 1963, as amended; the Genetic Information and Non-Disclosure Act ("GINA"), or any other federal, state, or local statute, or common law relating to employment, wages, hours, or any other terms and conditions of employment. This includes a release by [Plaintiffs] of any claims for wrongful discharge, breach of contract, torts, any and all rights to or claims for compensation or any other claims that in any way relate to [Plaintiffs'] employment with or engagement by Defendant Vaughn."

14. All Plaintiffs who submitted individually-executed settlement agreements are hereby barred and permanently enjoined from prosecuting, commencing or continuing any claims, causes of action, damages, liabilities of any kind, nature and character whatsoever in law, equity

6

Case 5:17-cv-00365-FL   Document 56   Filed 04/17/18   Page 6 of 7

or otherwise, known or unknown, suspected or unsuspected, that may exist or heretofore existed, against Defendant Vaughn arising out of, related to, connected with, or based in whole or in part to any facts, transactions, occurrences, representations or omissions alleged in the Complaint in this matter.

15. The Court retains jurisdiction over these actions and the parties to administer, supervise, interpret and enforce the individually-executed settlement agreements, and this Order.

SO ORDERED this __17th__ day of __April__, 2018.

_____
THE HONORABLE LOUISE WOOD FLANAGAN.
UNITED STATES DISTRICT JUDGE