IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:17-CV-365-FL

| | | |
|---|---|---|
| CHARLES PRESCOTT, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | |
| MORGREEN SOLAR SOLUTIONS, LLC; DARRIN GREEN; VAUGHN INDUSTRIES, LLC, | ) ) ) ) ) | |
| Defendants. | ) ) | |
| VAUGHN INDUSTRIES, LLC, | ) ) | |
| Counter Claimant, | ) ) ) | |
| v. | ) ) | ORDER |
| CHARLES PRESCOTT, on behalf of himself and all others similarly situated, | ) ) ) ) | |
| Counter Defendant. | ) ) | |
| VAUGHN INDUSTRIES, LLC, | ) ) | |
| Cross-Claimant, | ) ) ) ) | |
| v. | ) ) | |
| MORGREEN SOLAR SOLUTIONS, LLC; DARRIN GREEN, | ) ) ) ) | |
| Cross-Defendants. | ) ) | |

|   |   |
|---|---|
| MORGREEN SOLAR SOLUTIONS, LLC; DARRIN GREEN, | ) ) ) |
| Counter Claimants, | ) ) ) |
| v. | ) ) |
| CHARLES PRESCOTT, on behalf of himself and all others similarly situated, | ) ) ) |
| Counter Defendant. | ) ) ) |

This matter is before the court on plaintiff's motion for entry of default judgment (DE 46) and cross-claimant Vaughn Industries, LLC's ("Vaughn") motion for entry of default judgment (DE 74), argued at hearing March 27, 2019. Issues raised are ripe for ruling. For the following reasons, the court grants both motions.

**STATEMENT OF THE CASE**

As previously recounted by the court, plaintiffs filed complaint July 21, 2017, claiming defendants misclassified them as independent contractors, willfully failed to remit compensation for all hours worked, willfully failed to remit required overtime pay, and violated statutory record-keeping requirements. See Prescott v. MorGreen Solar Sols., LLC, 352 F. Supp. 3d 529, 534 (E.D.N.C. 2018). Count one alleges violations of the Fair Labor Standards Act, 29 U.S.C. §§ 206, 207 ("FLSA"), and plaintiffs proceeded on that claim in the posture of a proposed FLSA collective action. See 29 U.S.C. § 216(b). Count two alleges violations of the North Carolina Wage and Hour Act, N.C. Gen. Stat. §§ 95-25.6, .7, & .13 ("NCWHA"), and plaintiffs proceeded on that claim in the posture of a putative class under Federal Rule of Civil Procedure 23.

Cross-claimant Vaughn answered plaintiffs' complaint September 28, 2017, and initiated

cross-claims against MorGreen defendants.[1] No answer having been filed by defendant Darrin Green ("Green") or defendant MorGreen Solar Solutions, LLC ("MorGreen") (collectively, "MorGreen defendants"), on January 26, 2018, plaintiffs moved for entry of default against MorGreen defendants, which was granted on March 16, 2018, by the clerk of the court. (DE 27, DE 44). On March 15, 2018, cross-claimant Vaughn also filed motion for entry of default on its cross-claims against MorGreen defendants. (DE 39).

On March 26, 2018, plaintiff filed instant motion for entry of default judgment. (DE 46). In support, plaintiffs have submitted plaintiffs' pro-rated damages and declaration of attorney Gilda A. Hernandez.

During this time period, on March 14, 2018, MorGreen defendants' attorney filed notice of appearance, and, without seeking leave of the court, on April 12, 2018, MorGreen defendants filed answer to complaint.[2] Also during this period, on April 17, 2018, the court granted plaintiffs and cross-claimant Vaughn's joint motion for settlement approval, resolving all claims as to those parties.[3] The court "dismisse[d] all claims of Plaintiffs who submitted individually executed settlement agreements in this matter, as they relate to Defendant Vaughn only, based on or arising out of any acts, facts, transactions, occurrences, representations or omissions alleged in the

---

[1] Cross-claimant Vaughn additionally asserted counterclaims against opt-in plaintiff John Crisco which are no longer at issue.

[2] MorGreen defendants in answer asserted 19 affirmative defenses as well as asserting counterclaims against opt-in plaintiffs John Crisco and Kira Crisco ("Criscos"), claims which are no longer at issue.

[3] The FLSA's provisions are mandatory and are generally are not subject to bargaining, waiver, or modification by contract or private settlement. Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 706 (1945). However, FLSA claims may be compromised when a court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b). Lynn's Food Stores, Inc. v. United States, U.S. Dep't of Labor, 679 F.2d 1350, 1353 (11th Cir. 1982); see also Taylor v. Progress Energy, Inc., 493 F.3d 454, 460-61, 463 (4th Cir. 2007), reinstating 415 F.3d 364 (4th Cir. 2005) (discussing need for prior approval from court or Department of Labor of any waiver or release of FLSA claims).

Complaint in this matter on the merits and with prejudice and without costs to any of the parties as against any other settling party, except as provided in the parties' mediation agreement and individually-executed settlement agreements." (Court-approved settlement agreement (DE 56) ¶ 12).

Both plaintiffs and cross-claimant Vaughn filed motions to strike MorGreen defendants' answer on April 16, 2018 and April 20, 2018, respectively. (DE 54, DE 59). MorGreen defendants did not file response to the motions to strike, but on April 17, 2018, filed motion to set aside order on motion for entry of default, alleging "Defendants had consulted with several law firms, none of which were willing and/or able to take them on as clients" and that "Defendants filed an Answer with the Court on April 12, 2018, which was as early as they could possibly find counsel." (DE 58 at 1).

On August 27, 2018, the court issued order, holding resolution of ripe motions in abeyance pending further briefing, directing MorGreen defendants to submit additional information to the court regarding when MorGreen defendants contacted law firms, what was the response of the law firms including terms and deadlines, and any communication between the parties. (DE 66 at 3-4). In response, MorGreen defendants filed timely affidavit and memorandum, (DE 67, DE 68), in which defendant Green provided some, but not all, of the information requested by the court, stating in part that two of the law firms contacted informed MorGreen defendants to do nothing in response to the lawsuit "since we were a startup company with no assets and we were protected because of being a LLC." (DE 67 at 1-2).[4]

---

[4] Cross-claimant Vaughn provided the court with additional information that the court requested from MorGreen defendants, which MorGreen defendants failed to provide. Cross-claimant Vaughn's general counsel submitted affidavit, stating that in Fall of 2017 he made several attempts to contact defendant Green, and that on January 9, 2018 he spoke with someone identifying himself as defendant Green, and the following information was exchanged:

On November 29, 2018, the court granted cross-claimant Vaughn's motion for entry of default, granted plaintiffs' and cross-claimant Vaughn's motions to strike, and denied MorGreen defendants' motion to set aside order on motion for entry of default. See Prescott, 352 F. Supp. 3d at 534 (citing Payne ex rel. Estate of Calzada v. Brake, 439 F.3d 198, 204-05 (4th Cir. 2006) ("When deciding whether to set aside an entry of default, a district court should consider whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic.")). The court also noted that plaintiffs' motion for entry of default judgment was ripe and pending, but where it appeared that cross-claimant Vaughn would also file motion for entry of default judgment, the court would take up and address both of these motions together under separate order.

Time elapsed with no motion for entry of default judgment filed by cross-claimant Vaughn. On January 14, 2019, the court entered order directing cross-claimant Vaughn to proceed to reduce this matter to judgment. On February 4, 2019, cross-claimant Vaughn filed the instant motion for entry of default judgment. (DE 74). In support, cross-claimant Vaughn filed 1) declarations of attorneys David Andrews and Patrick Lawler 2) copies of checks mailed to the settlement agreement administrator in the amount of $149,501.50, which is the sum of the settlement agreement payment

---

I identified myself as counsel for Vaughn and asked if he was aware that a lawsuit had been filed by former employees of his company against him and Morgreen Solar Solutions. Mr. Green replied that he was aware of the lawsuit. I asked whether he was represented by an attorney. Mr. Green responded that he was not, but that he was working on getting one. I asked who that attorney was. Mr. Green replied that he could not remember the attorney's name or the name of the firm. I told Mr. Green that it was extremely important for him to get an attorney because this case was moving forward and a judgment for more than $400,000 could be entered against him. Mr. Green said it did not matter as his company was out of business and had no assets. I told him that he was being sued personally and that any judgment could potentially be entered against him personally.

(DE 69-1).

5

and the employers matching taxes, and 3) subcontract agreement between cross-claimant Vaughn and MorGreen defendants (the "subcontract").

On March 27, 2019, the court held hearing regarding the instant motions for entry of default judgment in which all parties provided the court with argument.

**STATEMENT OF FACTS**

The following facts are alleged in plaintiffs' complaint and cross-claimant Vaughn's answer and cross-claims and are accepted as true upon consideration of default judgment.

A.   Plaintiffs' Facts Alleged

Cross-claimant Vaughn provides renewable energy services as a contractor throughout the State of North Carolina, as well as in several other states, specializing in the installation of solar fields or farms. (Compl. (DE 1) ¶ 37). Defendant Green founded and holds a majority ownership stake in defendant MorGreen. Defendant MorGreen, a subcontractor who performed construction services on cross-claimant Vaughn's behalf, contracted exclusively with cross-claimant Vaughn throughout defendant MorGreen's existence. Plaintiffs worked for defendants, manually installing solar panels in Wilson, North Carolina from approximately November 2016, until January 14, 2017 ("Wilson Project"). (Id. ¶ 24).

Plaintiffs allege defendants "had a systemic company-wide policy, pattern, or practice of misclassifying their employees as independent contractors, willfully failing to compensate employees for all hours worked, willfully failing to pay employees the statutory minimum wage rate for all hours worked, willfully failing to compensate employees at the appropriate overtime rate for overtime hours worked, and violating statutory record-keeping provisions." (Id. ¶ 1).

More specifically, plaintiffs worked as hourly-paid installers/laborers on behalf of all

6

defendants, assisting in the manual installation of solar panels. In addition to receiving an hourly wage, they also received a set per diem rate for each day of work. Plaintiffs were not paid a salary for their work.

From the beginning of their work until approximately December 3, 2016, plaintiffs typically worked five days per week, from Monday through Friday, from approximately 6:30 a.m. until 5:00 p.m. They also took a one-hour unpaid lunch break each day. Accordingly, during this period, plaintiffs typically worked approximately 47.5 hours per week. From December 4, 2016, until the end of their employment, plaintiffs typically worked seven days per week, from Monday through Saturday, from approximately 6:30 a.m. until 5:00 p.m., and on Sunday from 6:30 a.m. until 12:00 p.m. They also took a one-hour unpaid lunch break each day. Accordingly, during this period, plaintiffs typically worked approximately 62.5 hours per week. Although the aforementioned typical schedule is a conservative estimate, plaintiffs often worked more hours than listed during this period, including until 8:00 p.m. or 9:00 p.m. from Monday through Saturday, totaling approximately 86.5 hours in certain weeks.

The schedules that defendants required plaintiffs to work virtually eliminated their ability to pursue sources of income outside of their jobs with defendants. Defendants, in their sole discretion, set plaintiffs' hourly rates of pay and per diem rates. Plaintiffs had no control over their profit or loss capabilities, despite the fact that defendants classified them as independent contractors. Plaintiffs were not permitted to hire their own employees, despite the fact that defendants classified them as independent contractors. Likewise, if plaintiffs did not show up to work, they could not send a replacement hired by them to perform the work.

Defendants instructed, supervised, and corrected all aspects of plaintiffs' work, despite the

fact that defendants classified them as independent contractors. Cross-claimant Vaughn supplied plaintiffs with building materials and tools needed to perform their work. For example, all nuts, bolts, washers, rivets, wiring, racking, and modules were provided by cross-claimant Vaughn.

Throughout the course of their employment, and particularly toward the end of their employment, defendants regularly failed to pay plaintiffs both their agreed-upon hourly wages and per diem rates. All defendants always had access to plaintiffs' time records. Plaintiffs regularly complained to defendants about their unlawful pay practices, and defendants' practices have been the subject of at least one investigation by the North Carolina Department of Labor wherein the agency determined that defendants had violated the NCWHA and provided plaintiff with a right to sue letter.

MorGreen defendants, a subcontractor for cross-claimant Vaughn, contracted exclusively with cross-claimant Vaughn throughout MorGreen defendants' existence. Defendant Green founded and holds a majority ownership stake in Defendant MorGreen. Defendant Green was actively involved in the day-to-day activities of Defendant MorGreen, and he dictates how the company operates, markets itself, acquires business, and compensates its employees. Defendant Green had and exercised the power to directly dictate whether Defendant MorGreen complied with or violated the FLSA and NCWHA.

The services performed by plaintiffs, including racking, wiring, and panel installation, was integral to cross-claimant Vaughn and MorGreen defendant's businesses and operations, which center around renewable energy construction and installation.[5]

---

[5] Plaintiffs also allege facts in support of multiple claims which are no longer at issue including 1) claim that cross-claimant Vaughn and MorGreen defendants were joint employers, 2) claim for FLSA collective action, and 3) claim for NCWHA class action.

B.   Cross-Claimant Vaughn's Facts Alleged

On or about November 1, 2016, cross-claimant Vaughn and MorGreen defendants entered into the subcontract pursuant to which Morgreen defendants agreed to provide labor, materials, equipment and services necessary to perform work regarding a solar panel installation project in Wilson, North Carolina. (See DE 17; see also subcontract (DE 75-3)). Cross-claimant Vaughn alleges the relevant provisions of the subcontract as follows:

> 3.   In paragraph 11 of the Subcontract, the parties agreed that Cross-Claim Defendants "shall be solely responsible for and have control over construction means, methods, techniques, sequences and procedures and for coordinating and supervising all portions of the Work under the Subcontract and shall be responsible for the acts and omissions of Subcontractor's employees, subcontractors and their agents and employees and for all applicable employer taxes, benefits and insurance."
>
> 4.   The parties agreed in paragraph 11 that the Subcontract shall not be construed to "imply a joint venture, partnership or principal-agent relationship between the parties; and neither party by virtue of the Subcontract shall have any right, power, or authority to act or create any obligations, express or implied, on behalf of the other party."
>
> 5.   In paragraph 12.1, Cross-Claim Defendants agreed to "comply with all applicable laws, ordinances, rules, regulations, and orders of any public authority . . . including without limitation . . . prevailing wages." Cross-Claim Defendants further agreed that it "shall be liable to [Vaughn] for all damages, fines, penalties, costs and expenses incurred by [Vaughn] resulting from [Cross-Claim Defendants'] failure to comply with such Laws."
>
> 6.   In paragraph 6.8, Cross-Claim Defendants agreed "that all monies received [from Defendant] shall first be used for the payment of all labor and materials used in the Work."
>
> 7.   In paragraph 13.1, Cross-Claim Defendants agreed to indemnify and hold harmless Vaughn "from and against any and all claims, damages, losses and expenses . . . arising out of or resulting from: (i) any breach or default of [Cross-Claim Defendants] in performance of its obligations under the Subcontract."
>
> 8.   Cross-Claim Defendants agreed in paragraph 13.2 that in claims against Vaughn by "an employee of [Cross-Claim Defendants] . . . the foregoing indemnification obligation shall not be limited by a limitation on the amount or type

9

of damages, compensation or benefits payable by or for [Cross-Claim Defendants]." (DE 17 ¶¶ 3-8).[6]

## DISCUSSION

**A.     Standard of Review**

A "defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001). "The defendant is not held to admit conclusions of law," and "a default judgment may be lawfully entered only according to what is proper to be decreed upon the statements of the [complaint], assumed to be true, and not as of course according to the prayer of the [complaint]." Id. (quotations omitted). Additionally, Rule 55(b)(2) provides that, if necessary, "the court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."

A party seeking damages is required to prove damages by preponderance of evidence following entry of default before entry of default judgment. Consolidated Masonry & Fireproofing, Inc. v. Wagman Const. Corp., 383 F.2d 249, 252 (4th Cir. 1967). Where the defaulting party "contests the damages at issue, a full hearing may be required on the issue of damages, since a default does not concede the amount demanded." 10A Charles Alan Wright & Arthur. R. Miller, Federal Practice and Procedure § 2688 (4th ed. 2018) (citing Pope v. United States, 323 U.S. 1, 12 (1944)).

---

[6] Cross-claimant Vaughn also alleges facts in support of claims against opt-in plaintiff John Crisco which are no longer at issue.

Moreover, the court may exercise its discretion to investigate further allegations made on information and belief. See Fed. R. Civ. P. 55(b)(2)(C)–(D). Where, as here, large damages are involved, the court properly exercises discretion to "establish the truth of [allegations] by evidence." Fed. R. Civ. P. 55(b)(2)(C); see Hutton v. Fisher, 359 F.2d 913, 916 (3d. Cir. 1966) ("Matters involving large sums should not be determined by default judgment if it can reasonably be avoided.").

B.     Analysis

At March 28, 2019, hearing, MorGreen defendants argued that pursuant to Frow v. De La Vega, 82 U.S. 552 (1872), MorGreen defendants cannot be held liable to plaintiffs, only cross-claimant Vaughn. The court will address this issue first and then address claims against MorGreen defendants as well as the amount of damages sought by plaintiffs and cross-claimant Vaughn.

    1.     MorGreen's Defendants Liability as to Plaintiffs

It is well-settled that a defendant against whom entry of default has been made is still entitled to the benefit of an adjudication on the merits as to the remaining defendants in the action. Frow, 82 U.S. at 554; United States for Use of Hudson v. Peerless Ins. Co., 374 F.2d 942, 944 (4th Cir. 1967) (holding Frow applicable "not only to situations of joint liability but to those where the liability is joint and/or several"); In re First T.D. & Inv., Inc., 253 F.3d 520, 532–33 (9th Cir. 2001) ("It would likewise be incongruous and unfair to allow the Trustee to prevail against Defaulting Defendants on a legal theory rejected by the bankruptcy court with regard to the Answering Defendants in the same action"); Lewis v. Lynn, 236 F.3d 766, 768 (5th Cir. 2001) ("Furthermore, we hold that the district court did not err in allowing [defaulting parties] to benefit from the appearing defendants' favorable summary judgment motion"); Gulf Coast Fans v. Midwest Elecs.

Imp., 740 F.2d 1499, 1512 (11th Cir. 1984) ("It would be incongruous and unfair to allow Gulf Coast to collect a half million dollars from PAX on a contract that a jury found was breached by Gulf Coast"); 10A C. Wright & A. Miller, Federal Practice and Procedure, § 2690 (2007).

In Frow, the plaintiff filed a complaint charging eight defendants with a "joint conspiracy" to defraud him of a piece of real property. One of these eight, Frow, failed to file a timely answer, and the district court entered a pretrial default judgment against him. The court eventually decided the merits of the case against plaintiff and dismissed the bill. Frow appealed the default judgment and the Supreme Court reversed, stating as follows:

> If the court in such a case as this can lawfully make a final decree against one defendant separately, on the merits, while the cause was proceeding undetermined against the other, then this absurdity might follow: there might be one decree of the court sustaining the charge of joint fraud committed by the defendants; and another decree disaffirming the said charge, and declaring it to be entirely unfounded, and dismissing the complainant's bill. And such an incongruity, it seems, did actually occur in this case. Such a state of things is unseemly and absurd, as well as unauthorized by law.

Id. at 554. A defaulting defendant loses his standing in court and his right to notice. "If the suit should be decided against the complainant on the merits, the bill will be dismissed as to all the defendants alike—the defaulters as well as the others. If it be decided in the complainant's favor, he will then be entitled to a final decree against all." Id.

In this case, Frow does not apply. Here, the court is not issuing a default judgment against MorGreen defendants while other defendants remain in the case for a determination on the merits. No adjudication on the merits has or will occur due to plaintiffs and defendant Vaughn's settlement agreement, releasing all claims as to these parties. (See Court-approved settlement agreement (DE 56) ¶¶ 12-13 (court dismissing all claims of plaintiffs against Vaughn and plaintiffs agreeing to release all past and present claims against Vaughn)). Additionally, also due to the settlement, no

12

risk of inconsistent judgments remains where there are no remaining claims to adjudicate against a co-defendant. See In re Uranium Antitrust Litig., 617 F.2d 1248, 1257–58 (7th Cir. 1980) ("The result in Frow was clearly mandated by the Court's desire to avoid logically inconsistent adjudications as to liability. However, when different results as to different parties are not logically inconsistent or contradictory, the rationale for the Frow rule is lacking."). At no point has, nor will, the court adjudicate claims against any defendants in this case in their favor. See Farzetta v. Turner & Newall, Ltd., 797 F.2d 151, 154 (3rd Cir. 1986) (holding Frow stands for the proposition that "if at trial facts are proved that exonerate certain defendants and that as a matter of logic preclude the liability of another defendant, the plaintiff should be collaterally estopped from obtaining a judgment against the latter defendant, even though it failed to participate in the proceeding in which the exculpatory facts were proved.").[7]

MorGreen defendants have not cited cases, nor is the court aware of any, applying Frow to a situation the same or even similar to the current situation before the court.[8] Instead, the only case the court could find analogous to the present situation held, as the court holds here, Frow not

---

[7] The present case stands in contrast to others in this circuit where a party has been dismissed without prejudice, thus allowing said party the opportunity to adjudicate the claims at issue in the future. See Hudson, 374 F. 2d 942 (dismissal without prejudice of principal precludes entry of default judgment against surety); i play. inc. v. D. Catton Enter., LLC, No. 1:12-CV-22-MR, 2014 WL 1119962, at *4 (W.D.N.C. Mar. 20, 2014) ("As such, the Plaintiff's claims against the dismissed Defendant and DCE are more interdependent than even those found in Hudson. Plaintiff thus has two options to remedy this potential 'absurdity.' It can dismiss Hart with prejudice by amended notice, or it can seek a dismissal without prejudice as to DCE and start anew.").

[8] MorGreen defendants' cite in support of their position Harris v. Carter, 33 N.C. App. 179, 183, 234 S.E.2d 472, 475 (1977). However, that case is inapposite where the court only held that even if certain facts "had been admitted or otherwise conclusively established," entry of default or default judgment as to one defendant would not have barred a co-defendant "from asserting all defenses they might have to defeat plaintiff's claim." Id. (citing United States v. Borchardt, 470 F.2d 257 (7th Cir. 1972) ("This argument misconceives the nature of a default; although a default may serve as the basis for a default judgment . . . the entry does not of itself determine rights.")).

applicable.[9] Indeed, application of Frow in such a situation would discourage settlement between parties and encourage tardiness in litigation, where MorGreen defendants would receive a windfall of an adjudication of no liability simply because plaintiffs and cross-claimant Vaughn engaged in fruitful settlement negotiations while MorGreen defendants failed to plead or otherwise defend this lawsuit and failed to show good cause for so doing. See Prescott, 352 F. Supp. 3d 529.

Therefore, the court rejects MorGreen defendants' argument that Frow limits the ability of the court to enter default judgment against MorGreen defendants.

2. Claims Against MorGreen Defendants

Having accepted the well-pleaded allegations of fact in plaintiffs' complaint and cross-claimant Vaughn's answer and cross-claims as true, the court must still determine whether those allegations support the relief sought. See Ryan, 253 F.3d at 780. The court finds that the allegations support the relief sought as discussed further below and notes that MorGreen defendants have not argued otherwise.

    a. Plaintiffs' Claims Against MorGreen Defendants under FLSA and NCWHA

The FLSA defines "employee" as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), and "employer" as "any person acting directly or indirectly in the interest of an employer

---

[9] As stated by the federal district court:

Since the Court's initial ruling Gary Kornman and the Jenkins Defendants have entered into mutual releases of all claims brought against each other in this litigation. AE Marketing now contends that this settlement should apply with full effect to AE Marketing; the Court disagrees. While this settlement precludes a finding of liability against Gary Kornman, it does not establish that Gary Kornman, on behalf of AE Marketing, did not act as described in the Jenkins Complaint. Put another way, the settlement has only legal consequence to Gary Kornman and it cannot undo the factual consequences imposed on AE Marketing as a result of its willful default or the legal consequences imposed by entry of default judgment.

AE MARKETING L.L.C., et al., Plaintiffs, v. JENKINS-BALDWIN CORPORATION, MERALEX, L.P., REVANCHE, L.L.C., & HOWARD M. JENKINS, Defendants,, No. 3:07-CV-0321-F, 2013 WL 12228622, at *6 (N.D. Tex. May 22, 2013).

in relation to an employee," 29 U.S.C. § 203(d). The FLSA defines "employ" broadly, to cover anyone who is "suffer[ed] or permit[ed] to work." 29 U.S.C. § 203(g). Pursuant to the FLSA, 29 U.S.C. § 206, employers must pay non-exempt employees a minimum wage of $7.25 per hour for all hours worked. Pursuant to the FLSA, 29 U.S.C. § 207, employers must pay non-exempt employees at a rate of one and one-half times their regular rate of pay, for all hours worked over 40 in one week.

Courts apply a six-factor test to determine if an individual is an employee versus an independent contractor: 1) the degree of control that the putative employer has over the manner in which the work is performed; 2) the worker's opportunities for profit or loss dependent on his managerial skill; 3) the worker's investment in equipment or material, or his employment of other workers; 4) the degree of skill required for the work; 5) the permanence of the working relationship; and 6) the degree to which the services rendered are an integral part of the putative employer's business. Schultz v. Capital Int'l Sec., Inc., 466 F.3d 298, 304–05 (4th Cir. 2006); see id. at 305 ("No single factor is dispositive; again, the test is designed to capture the economic realities of the relationship between the worker and the putative employer").

Additionally, it is unlawful under North Carolina law for an employer to "suffer or permit" an employee to work without paying owed, promised, or earned wages for all hours worked, in violation of N.C. Gen. Stat. §§ 95-25.6, 95-25.7 and 95-25.13. Pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.6, employers must pay all owed, earned, and/or promised wages accruing to their employees, for all hours of work, at their regular hourly rate.

Here, facts alleged in the complaint show a violation of the FLSA and NCWHA where plaintiffs have alleged 1) defendants instructed, supervised, and corrected all aspects of plaintiffs'

15

work; 2) defendants, in their sole discretion, set plaintiffs' hourly rates of pay and per diem rates and plaintiffs had no control over their profit or loss capabilities; 3) plaintiffs were not permitted to hire their own employees; 4) services performed by plaintiffs, including racking, wiring, and panel installation, was integral to defendants businesses and operations, which center around renewable energy construction and installation, and 5) throughout the course of their employment, and particularly toward the end of their employment, defendants regularly failed to pay plaintiffs both their agreed-upon hourly wages and per diem rates. (See Compl. (DE 1) ¶¶ 29-31, 33, 51)

    b.  Cross-Claimant Vaughn's Claims Against MorGreen Defendants for Breach of Contract, Indemnification, and Contribution

Under North Carolina law, the "elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." Crosby v. City of Gastonia, 635 F.3d 634, 645 (4th Cir. 2011) (quotations omitted).

Facts alleged by cross-claimant Vaughn show a breach of contract, where it is alleged cross-claimant Vaughn and MorGreen defendants entered into a valid contract, the subcontract, and MorGreen defendant breached the terms of that subcontract by failing to comply the FLSA and NCWHA and by failing to indemnify cross-claimant Vaughn for violations of the FLSA and NCWHA. (See DE 17 ¶ 5 (alleging "[i]In paragraph 12.1, Cross-Claim Defendants agreed to 'comply with all applicable laws, ordinances, rules, regulations, and orders of any public authority . . . including without limitation . . . prevailing wages'" and that "Cross-Claim Defendants further agreed that it 'shall be liable to [Vaughn] for all damages, fines, penalties, costs and expenses incurred by [Vaughn] resulting from [Cross-Claim Defendants'] failure to comply with such Laws.'"); id. ¶ 7 ("In paragraph 13.1, Cross-Claim Defendants agreed to indemnify and hold harmless Vaughn 'from and against any and all claims, damages, losses and expenses . . . arising out

of or resulting from: (i) any breach or default of [Cross-Claim Defendants] in performance of its obligations under the Subcontract.'").

Likewise, facts alleged by cross-claimant Vaughn show right to indemnification where cross-claimant Vaughn alleges MorGreen defendants were plaintiffs' employers for the purposes of the FLSA and NCWHA and solely responsible for payment of wages, as evidenced by the subcontract,[10] and where cross-claimant Vaughn has paid plaintiffs unpaid wages and attorneys' fees pursuant to the settlement agreement between cross-claimant Vaughn and plaintiffs. (See subcontract (DE 75-3) ¶ 13.1 (MorGreen defendants agreeing to indemnify cross-claimant Vaughn "from and against any and all claims, damages, losses and expenses, including, without limitation, reasonable attorneys' fees")).[11]

3. Damages Amounts

The FLSA provides that "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, . . . and in an additional equal

---

[10] Under the FLSA, two or more parties can be determined to be "joint employers" where, for example, "the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek . . . such as: . . . . Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer." 29 C.F.R. § 791.2. Here, however, as alleged by cross-claimant Vaughn, in paragraph 11 of the subcontract, the parties agreed that MorGreen defendants "shall be solely responsible for and have control over construction means, methods, techniques, sequences and procedures and for coordinating and supervising all portions of the Work under the Subcontract and shall be responsible for the acts and omissions of Subcontractor's employees, subcontractors and their agents and employees and for all applicable employer taxes, benefits and insurance" and that the subcontract shall not be construed to "imply a joint venture, partnership or principal-agent relationship between the parties; and neither party by virtue of the Subcontract shall have any right, power, or authority to act or create any obligations, express or implied, on behalf of the other party." (DE 17 ¶¶ 3-4).

[11] Given the court's holding above, it is unnecessary to address cross-claimant Vaughn's claim for contribution. See Holland v. Edgerton, 85 N.C.App. 567, 571 (N.C. Ct. App.1987) ("a defendant is not entitled to contribution for a claim against him in contract.").

amount as liquidated damages." 29 U.S.C. § 216. The right to recover or not to recover liquidated damages is within the district court's sound discretion if "the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA] . . ." 29 U.S.C. § 260.

Similarly, the NCWHA provides as follows:

(a) Any employer who violates the provisions of G.S. 95-25.3 (Minimum Wage), G.S. 95-25.4 (Overtime), or G.S. 95-25.6 through 95-25.12 (Wage Payment) shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, their unpaid overtime compensation, or their unpaid amounts due under G.S. 95-25.6 through 95-25.12, as the case may be, plus interest at the legal rate set forth in G.S. 24-1, from the date each amount first came due.

(a1) In addition to the amounts awarded pursuant to subsection (a) of this section, the court shall award liquidated damages in an amount equal to the amount found to be due as provided in subsection (a) of this section, provided that if the employer shows to the satisfaction of the court that the act or omission constituting the violation was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of this Article, the court may, in its discretion, award no liquidated damages or may award any amount of liquidated damages not exceeding the amount found due as provided in subsection (a) of this section.

N.C. Gen. Stat. § 95-25.22.

In their instant motion for entry of default judgment, plaintiffs' counsel has stated that "[a]fter discussing with each Plaintiff his or her rate of pay, best estimate of weekly hours worked, and their number of weeks worked," the total amount owed to plaintiffs is approximately $338,303.61, (see DE 47-1, DE 47-2 at 2),[12] and plaintiffs also seek $66,814.90 in attorneys' fees, (DE 47-2 at 2-3). Plaintiffs and cross-claimant Vaughn agree that cross-claimant Vaughn has

---

[12] This damages estimate of $338,303.6, as well as additional details as to how this amount was calculated, was submitted to the court also in conjunction with plaintiffs and cross-claimant Vaughn's settlement agreement, calculating the amount owed to plaintiffs for all unpaid wages. (See DE 53-3 at 14-17).

already paid plaintiffs, pursuant to the settlement agreement, $149,501.50, meaning the total plaintiffs now seeks from MorGreen defendants is $257,613.60.[13]

Cross-claimant Vaughn, in instant motion for entry of default judgment, asserts Vaughn has fully complied with the settlement agreement approved by the court, and seeks the total amount paid by Vaughn to plaintiffs in the amount of $149,501.50, as well as attorneys' fees and expenses in the amount of $41,862.00, resulting in a sum of $191,363.50 sought from MorGreen defendants.[14]

MorGreen defendants do not dispute these amounts, arguing only that consistent with the principles announced in Frow and because MorGreen defendants and cross-claimant Vaughn were alleged to be jointly liable, MorGreen defendants owe "at worst" half of what cross-claimant Vaughn paid in the global settlement agreement to plaintiffs. The court has rejected MorGreen defendants' Frow-based arguments above, and MorGreen defendants offer no further argument or case law in support of the position that MorGreen defendants owe less than the full amount requested by plaintiffs and cross-claimant Vaughn.[15]

---

[13] In plaintiffs' calculations submitted to the court, there was a roughly $9,000.00 discrepancy between what plaintiffs' represented plaintiffs had received from cross-claimant Vaughn and what cross-claimant Vaughn represented cross-claimant Vaughn had paid to plaintiffs. During March 27, 2019 hearing, the parties conferred and represented to the court that 1) cross-claimant Vaughn's numbers were accurate and 2) plaintiffs seek in total from MorGreen defendants $257,613.60. Because this amount is only slightly different and slightly less than the amount it appears owed to plaintiffs based on the numbers submitted by the parties, the court grants plaintiffs' request for relief as requested.

[14] Cross-claimant Vaughn argues it is entitled to not only the amount paid by this entity to plaintiff via settlement agreement but also its own attorneys' fees in that MorGreen defendants "have contractually agreed to indemnify Vaughn 'from and against any and all claims, damages, losses and expenses, including, without limitation, reasonable attorneys' fees' such as those expended in this case." (DE 75 at 2 (citing subcontract (DE 75-3) ¶ 13.1)). MorGreen defendants do not argue otherwise.

[15] The court additionally rejects MorGreen defendants' arguments that plaintiffs, via settlement agreement, "have been made whole" and "settled all claims" at issue in this litigation, as not supported by the record. (See, e.g., Court-approved settlement agreement (DE 56) ¶ 12 ("The Court hereby dismisses all claims of Plaintiffs who submitted individually executed settlement agreements in this matter, as they relate to Defendant Vaughn only . . . ."); DE 53-3 ¶ 32 ("The amount of the settlement represents approximately 57% of actual damages . . . [or] 26% of the potential recovery for total damages, including liquidated damages and interest . . . .")).

Therefore, the court awards to plaintiffs and cross-claimant Vaughn the amounts requested by each of those parties.

## CONCLUSION

Based on the foregoing, the court GRANTS plaintiff's motion for entry of default judgment (DE 46) and GRANTS cross-claimant Vaughn's motion for entry of default judgment (DE 74). The court AWARDS plaintiffs $257,613.60 in damages and attorneys' fees from MorGreen defendants and AWARDS cross-claimant Vaughn $191,363.50 in damages and attorneys' fees from MorGreen defendants. The clerk is DIRECTED to enter judgment for plaintiffs and cross-claimant Vaughn in these amounts. The clerk is DIRECTED to close the case.

SO ORDERED, this the 29th day of March, 2019.

_____
LOUISE W. FLANAGAN
United States District Judge